## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES JENKINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:15-cv-03894-JP** |
| | ) | |
| **REALPAGE, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant, RealPage, Inc. ("RealPage" or "Defendant"), by counsel, submits this Memorandum in Support of its Motion to Dismiss Claims I and II of the Complaint for lack of subject matter jurisdiction in light of the United States Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, No. 13-339, 2016 U.S. LEXIS 3046 (May 16, 2016).

### INTRODUCTION

Plaintiff James Jenkins ("Plaintiff" or "Jenkins") has failed to allege that the class members he purports to represent suffered any concrete harm as required under Article III of the U.S. Constitution.  As a threshold and dispositive matter, Plaintiff lacks standing to bring the putative class claims in this action, which are solely premised on technical, procedural violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*.

The Court previously granted RealPage's motion to stay the above-captioned matter pending the U.S. Supreme Court's ruling in *Spokeo*.  (*See* Dkt. No. 22.)  The Court noted in its Order granting the stay:  "[I]f the Supreme Court decides that Congress may not 'confer Article III standing upon a plaintiff who suffers no concrete harm,' such decision would substantially affect Plaintiff's standing to bring Claims I and II."  (*Id.*, p.2 n.1.)  As this Court predicted, the *Spokeo* Court found that alleging a mere technical violation of the FCRA "does not mean that a

plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  2016 U.S. LEXIS 3046 at *16.

Specifically, the U.S. Supreme Court's May 16, 2016, decision in *Spokeo* reinforced the Court's gate-keeping duties with respect to Article III standing where, as here, a plaintiff alleges a bare statutory violation of a procedural right.  The Supreme Court emphasized that "a bare procedural violation, divorced from any concrete harm" is plainly insufficient to establish standing. *Id.*

The problems caused by a lack of standing are multiplied many times over in a putative class action where Plaintiff seeks to represent thousands of individuals without *any* allegations (let alone evidence) that those class members suffered *any* sort of damages in *any* context (*e.g.*, economic, emotional, or otherwise).  In Claims I and II, Jenkins has not alleged any injury-in-fact related to the alleged technical violations of the FCRA by RealPage, which include RealPage allegedly not providing the complete address of agencies with responsibility for enforcing the FCRA.[1]  (Compl. ¶ 23.)  Because Jenkins has alleged no more than a "bare procedural violation, divorced from any concrete harm" for each of his class claims, he does not have standing to pursue his claims for alleged willful violations of the FCRA.

## FACTUAL BACKGROUND

In his Complaint, Jenkins asserts two class claims alleging violations of 15 U.S.C. §§ 1681g(a)(2) and 1681g(c)(2) against RealPage, a company that provides landlords access to tenant screening information to use in determining prospective tenants' eligibility to rent or lease housing.  The class claims do not seek actual damages and do not allege any injuries-in-fact.

---

[1] The Complaint does contain an individual inaccuracy claim which seeks actual damages; however, the class claims seek only statutory and punitive damages.

Instead, on behalf of the classes, Jenkins seeks only statutory damages based on the alleged willful violations of 15 U.S.C. § 1681g(a)(2) and 1681g(c)(2).  (*See* Compl. ¶¶ 21-22.)

The Complaint alleges that RealPage violated the FCRA by:  (1) failing to properly disclose the vendor that retrieved public record criminal conviction information used in consumer reports; and (2) failing to include in a "Summary of Rights" disclosure the addresses of certain Federal agencies responsible for enforcing the FCRA, even though the missing addresses would not have been of any assistance to Plaintiff.[2]  (*See* Compl. ¶¶ 28, 39.)  The Complaint does not allege that inaccurate information was provided about putative class members, nor does it allege that putative class members made any attempt to dispute the information.[3]  Jenkins seeks to represent nationwide classes on both of these claims, however, he has failed to allege, and cannot establish, any injury-in-fact on behalf of the classes.  In fact, Jenkins states that "[f]or purposes of class certification, Plaintiff seeks only statutory and punitive damages" as to each of his class claims.  (*See* Compl. ¶¶ 29 & 40; *see also* Compl. ¶¶ 35 & 45 (seeking only "statutory damages, punitive damages, costs, and attorneys' fees").)

---

[2] The Summary of Rights provided by RealPage unintentionally omitted complete addresses for certain federal agencies responsible for enforcing the FCRA, including those related to Air Carriers, Creditors Subject to the Surface Transportation Board, Small Business Investment Companies, Brokers and Dealers, Federal Land Banks, Nonmember Insured Banks and Federal Credit Unions.  (*See* Stockton Decl ¶ 5 and Ex. A.)  The agencies responsible for FCRA enforcement on behalf of these types of businesses would not have been able to offer any assistance to Plaintiff even if complete addresses had been provided.

[3] Jenkins' individual dispute was unrelated to the accuracy of the information retrieved by the vendor and was corrected within 24 hours.  (*Id.* at ¶ 7.)

3

## ARGUMENT

### I.        Subject Matter Jurisdiction under Fed. R. Civ. P. 12(b)(1).

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute. . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (quotations omitted).  Although challenges to subject matter jurisdiction can be made at any time, *Westray v. Mercy Life*, 2016 U.S. Dist. LEXIS 50129 (E.D. Pa. Apr. 13, 2016), Article III standing is a "threshold jurisdictional requirement" for any case in federal court, and thus, the Court should resolve questions of jurisdiction before proceeding with any other issues.  *See Tri-Realty Co. v. Ursinus Coll.*, Civ. A. No. 11-5885, 2015 U.S. Dist. LEXIS 111455 (E.D. Pa. Aug. 24, 2015) (citing *Public Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997)).

The Third Circuit recognizes two types of motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1):  "12(b)(1) motions that attack the complaint on its face and 12(b)(1) motions that attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings."  *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  The latter attacks the factual allegations underlying the complaint's assertion of jurisdiction through the presentation of competing facts, including evidence outside of the pleadings.  *Davis v. Wells Fargo*, Case No. 15-cv-2658, 2016 U.S. App. LEXIS 10030, at *25 (3d Cir. May 27, 2016); *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).  With respect to factual attacks, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.. . . [N]o presumptive truthfulness attaches to plaintiff's allegations. . . [and] the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  *Mortensen*, 549 F.2d at 891.  "Regardless whether the attack is facial or factual, the plaintiff bears the burden of proving jurisdiction."  *Smolow v.*

4

*Hafer*, 353 F.Supp.2d 561, 566 (E.D. Pa. 2005); *see also Kokkonen*, 511 U.S. at 377 (quotations omitted).  Article III of the U.S. Constitution limits the judicial power of the federal courts to actual "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  To invoke this power, a litigant must have standing, *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013), and the plaintiff bears the burden of proving such standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Spokeo*, 2016 U.S. LEXIS 3046, at *11.  "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong."  *Id.*

The "irreducible constitutional minimum" of standing consists of three elements.  *Lujan*, 504 U.S. at 560.  The plaintiff must prove (1) an injury in fact (2) fairly traceable to the challenged conduct (3) that is likely to be "redressed by a favorable judicial decision." *Hollingsworth*, 133 S. Ct. at 2661.  Relevant here, an injury in fact requires "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 561 (internal quotation marks and citations omitted); *Spokeo*, 2016 U.S. LEXIS 3046, at *5 ("[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both concrete *and* particularized").

"Injury in fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."  *Spokeo*, 2016 U.S. LEXIS 3046, at *12-13 (emphasis added); *see Gladstone, Realtors* v. *Village of Bellwood*, 441 U.S. 91, 100 (1979) ("In no event . . . may Congress abrogate the Art. III minima").  *Spokeo* affirmed the standard already followed in the Third Circuit.  *See*, *e.g.*, *Davis v. Wells Fargo*, Case No. 15-cv-2658, 2016 U.S. App. LEXIS 10030, at *27 (3d Cir. May 27, 2016) (citing *Lujan*, 504 U.S. at 561) ("plaintiff must show that he suffered an 'injury in fact,' meaning a concrete and particularized invasion of a legally

protected interest");  *Rodriguez v. Sec'y of Pa. Dep't of Envtl. Prot. of Pa.*, 604 F. App'x 113, 115 (3d Cir. 2015).

## II.     The Court Lacks Subject-Matter Jurisdiction.

RealPage's motion presents a facial and factual attack on the Court's subject matter jurisdiction that requires evidentiary resolution before the case can proceed any further.  As demonstrated below, the Court lacks subject matter jurisdiction over Plaintiff's claims as he fails to allege "concrete and particularized" injury on either an individual or class basis.

### A.     *Spokeo* rejected as insufficient for Article III standing the same type of technical violations alleged here.

In *Spokeo*, the Supreme Court considered whether Congress may confer Article III standing by authorizing a private right of action based on the violation of a federal statute alone. *Spokeo*, 2016 U.S. LEXIS 3046, at *2-4.  The Court ultimately remanded the case to the Ninth Circuit because it had failed to consider both aspects of the injury-in-fact requirement – that is, whether the plaintiff suffered (1) an "invasion of a legally protected interest" that is (2) "concrete *and* particularized."  *Id.* at *2-4, 18 (emphasis added).   According to the Court, the Ninth Circuit's "concreteness" analysis at the pleading stage was "incomplete."  *Id.* at *5.  "[A] 'concrete' injury must be '*de facto*'; that is, it must actually exist" in a "'real,' and not 'abstract'" sense.  *Id.* at *14.  Most applicable here, the Court held that "Article III standing requires a concrete injury even in the context of a statutory violation.  For that reason, [Plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."  *Id.* at *16.

*Spokeo* is consistent with established law in the Third Circuit.  The Third Circuit has consistently ruled that an injury-at-law is insufficient to confer Constitutional standing. *See, e.g.*, *Joint Stock Soc'y v. UDV North America, Inc.*, 266 F.3d 164, 176 (3d Cir. 2001) (no "injury in fact" from defendant's use of Smirnoff trade name where plaintiffs "never marketed any vodka

in the United States"); *Doe v. Nat'l Bd. of Medical Examiners*, 199 F.3d 146, 153 (3d Cir. 1999) ("proper analysis of standing focuses on whether the plaintiff suffered an actual injury. . . . Congress . . . cannot confer standing by statute alone").  Likewise, the Third Circuit recently recognized, "To be 'particularized,' an injury 'must affect the plaintiff in a personal and individual way.'"  *Patel v. Allstate N.J. Ins. Co.*, No. 15-2513, 2016 U.S. App. LEXIS 8006 (3d Cir. May 3, 2016).

The standing issue raised by Plaintiff's class claims is identical to the standing issue presented in *Spokeo*: whether a statutory violation of the FCRA, with no actual harm, is sufficient to confer Article III standing.  Like the plaintiff in *Spokeo* who brought a purported class action for alleged willful technical violations of the FCRA, the Complaint in this case alleges only technical violations, devoid of any particularized or plausible allegations of concrete harm.  Here, on behalf of the class, Plaintiff cannot establish that he has sustained any injuries-in-fact as a result of RealPage's alleged violations of the FCRA. In fact, the only violations Plaintiff alleges are mere technical violations that had no real impact on Plaintiff.

Relying on *Spokeo*, just days ago another federal court rejected the same sort of procedural claims as those made by Jenkins, in the context of a § 1681b claim:

> In this case, Plaintiffs allege they suffered harm when their "privacy was invaded and they were misled as to their rights under the FCRA." (Doc. 18, Mem. Opp. at 14). However, Plaintiffs admitted that they did not suffer a concrete consequential damage as a result of OSU's alleged breach of the FCRA. (*Id.*). Accordingly, the Court cannot find that Plaintiffs have suffered an injury-in-fact from OSU's alleged breach of the FCRA. Without a concrete and particularized injury-in-fact, there is no Article III standing in this Court. Because the Plaintiffs do not have standing in this Court, the Court lacks subject-matter jurisdiction. . . .

*Smith v. Ohio State Univ.*, 2016 U.S. Dist. LEXIS 74612, at *11-12 (D. Ohio June 8, 2016) (dismissing claims for lack of concrete injury where defendant's disclosure and authorization allegedly violated the FCRA by including extraneous information such as a liability release). Based on *Spokeo*, this Court should do the same.

7

**B.    Jenkins' allegations supporting Claim I of the Complaint describe a "bare procedural violation, divorced from any concrete harm."**

Jenkins alleges in Claim I that RealPage failed to properly disclose the vendor that retrieved public record criminal conviction information used in consumer reports, without alleging that such supposed failure caused any harm to him or to the putative class members. Plaintiff complains that his file did not include all of the "sources" of information – specifically, the identity of the vendor that retrieved the public record information.  (Compl. ¶ 21.)  Even if the FCRA required RealPage to disclose the vendor as the "source," which, as will be explained next, it does not, Plaintiff has not and cannot allege that he suffered any harm as a result of not receiving this information.  The purpose behind the "source" requirement is to allow a consumer to take necessary action to correct underlying incorrect information.  *See, e.g.*, *Hauser v. Equifax, Inc.*, 602 F.2d 811 (8th Cir. 1979) ("The purpose of the Act's disclosure requirement [in 15 U.S.C. § 1681g(a)] is to provide the consumer with an opportunity to dispute the accuracy of information in his file"); *Gillespie v. Equifax Info. Servs., LLC*, 484 F.3d 938, 941 (7th Cir. 2007) (primary purpose of disclosure requirement is to "allow consumers to identify inaccurate information in their credit files and correct this information").  Here, Plaintiff disputed that a record included in his report did not relate to him; however RealPage matches records to specific consumers using its own proprietary matching logic.  (Stockton Decl. ¶¶ 6, 8.)  Since the public record vendor plays no role in this matching process, the identity of the vendor providing criminal records data and the ability to contact that vendor would be immaterial to Plaintiff's dispute that the reported record did not belong to him.

In any event, the record at issue was no longer reported as part of Plaintiff's "file" at the time he requested a copy of his file.  (*Id.* at 8.)  Prior to his request, Plaintiff initiated a dispute and, within 24 hours RealPage determined that the record did not appear to belong to Plaintiff and removed it.  (*Id.* at 7.)  After RealPage completed the investigation and removed the record

8

from Plaintiff's file, Plaintiff requested the file, at which time the record was no longer included. (*Id.* at 8)  Plaintiff suffered no harm from RealPage's failure to identify the public record vendor (which was no longer a part of Plaintiff's file at that time the request was made).  In providing the information in Plaintiff's file at the time of his request, RealPage fully complied with the requirements of the FCRA.  *See* 15 U.S.C. § 1681g(a) (requirement to provide information in consumer's file applies to information in the file "at the time of the request").

Just like Jenkins himself, Plaintiff's proposed class members would have no cognizable harm due to the alleged failure to provide vendor information.  Plaintiff's putative class under Claim I includes:

> All natural persons who requested a copy of their consumer report (or consumer file) from Real Page [sic] on or after November 5, 2009, and received a report that failed to identify the source(s) of the information (i.e., Real Page's third party vendor) for any criminal conviction data in the report.

(Compl. ¶ 26.)   This class would include numerous persons who were provided accurate information in their consumer reports about criminal convictions for whom the alleged failure to identify the source of such records could have caused no conceivable harm.  As the Court recognized in *Spokeo*, where an agency provides accurate information about a consumer, but fails to provide a notice required by statute, there is no cognizable harm, and thus no standing. *Spokeo*, 2016 U.S. LEXIS 3046, at *17-18.

The proposed class also would include persons, including Jenkins, who might have criminal conviction data erroneously reported by RealPage, but where such errors were not attributable to, or capable of being addressed by, RealPage's third party vendor.  Disclosure of the third party vendor information would have made no difference under these circumstances, since the vendor played no role in the matching process.

In sum, the class proposed under Claim I is made up of numerous individuals who would have precisely the sort of "bare procedural violation, divorced from any concrete harm," that the

Court in *Spokeo* held was insufficient to "satisfy the injury-in-fact requirement of Article III." 2016 U.S. LEXIS 3046, at *16.

> **C.     Jenkins' allegations supporting Claim II of the Complaint also describe a <u>"bare procedural violation, divorced from any concrete harm."</u>**

In Claim II, Jenkins claims RealPage failed to include the contact information for certain Federal agencies responsible for enforcing the FCRA in a "Summary of Rights" disclosure, in violation of 15 U.S.C. § 1681g(c)(2)(C).  Plaintiff does not complain that he did not receive the Summary of Rights, but claims that the Summary of Rights he received did not include *all* of the contact information for *all* of the federal agencies responsible for enforcing certain sub-provisions of the FCRA. (Compl. ¶ 23.)

> Plaintiff's proposed class under Claim II includes:

> All natural persons who requested a copy of their consumer report (or consumer file) from Real Page on or after January 1, 2013, and received a report that did not contain the current "Summary of Rights" required by the Fair Credit Reporting Act and as promulgated by the Consumer Financial Protection Bureau.

(Compl. ¶ 37.)

Like the class in Claim I, this class would include numerous persons who had *entirely accurate* information reported by RealPage, and thus would have had no need to contact any federal agency.  Such persons fall squarely within the category of persons who the Supreme Court described in *Spokeo* as lacking a particularized concrete injury:  "[E]ven if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate."  *Spokeo*, 2016 U.S. LEXIS 3046, at *17-18.

The proposed class also would include numerous persons for whom, even if some information about some federal agencies was not provided, information about the agencies

10

relevant to their situations was provided.[4]  These persons, too, would have no cognizable injury.

Like the class claim in Claim I, this class claim runs afoul of *Spokeo*, because there was no cognizable harm associated with RealPage's alleged omission.  As discussed in footnote 2 above, the mailing addresses that were unintentionally omitted from the Summary of Rights did not include information related to agencies that enforce the FCRA with respect to tenant screening.  The primary agency responsible for FCRA enforcement is the Federal Trade Commission ("FTC") and apart from the telephone number, the FTC's contact information was included in the Summary of Rights. (Stockton Decl. ¶ 5.)  The omission of a telephone number would not have prevented Plaintiff from contacting the FTC if he felt the need to do so and it would not constitute a concrete harm.  Indeed, Plaintiff did not allege that he attempted and was unable to determine how to find the phone number for the FTC, nor that he even ever intended to contact the FTC.

The information missing from RealPage's Summary of Rights is quite similar to the type of information that the Court in *Spokeo* cited as an example of a non-concrete statutory violation that would not provide standing:

> A violation of one of the FCRA's procedural requirements may result in no harm. For example even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate.  In addition, not all inaccuracies cause harm or present any material risk of harm.  An example that comes readily to mind is an incorrect zip code.  It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm.

*Spokeo*, 2016 U.S. LEXIS 3046, at *17-18 (emphasis added).  This analysis, which is *directly on point* with Plaintiff's class claim, expressed the Supreme Court's view that a technical violation,

---

[4] As RealPage has explained, the agencies for which contact information was inadvertently omitted included those that would have nothing to do with landlord-tenant issues.  (Stockton Decl. ¶ 5.)

such as a mistake in contact information of the sort at issue here, is not enough to create particularized, concrete harm.

In short, Plaintiff's allegations are exactly the sort of non-concrete "harms" rejected by *Spokeo* as insufficient to ground standing under Article III.  *See Spokeo*, 2016 U.S. LEXIS 3046, at *16 ("Article III standing requires a concrete injury even in the context of a statutory violation).

## **CONCLUSION**

WHEREFORE, Defendant, RealPage, Inc., respectfully requests that the Court grant its motion to dismiss Claims I and II of the Complaint for lack of subject matter jurisdiction with prejudice, and grant such further relief that it deems appropriate.

Restfully submitted,

HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER

Dated:  June 24, 2016        /s/ Mark A. Aronchick

Mark A. Aronchick
Sharon F. McKee
One Logan Square
18th & Cherry Streets, 27th Floor
Philadelphia, PA 19103-6933
Telephone: 215.496.7002, 7060
Facsimile: 215.568.0300
Email: maronchick@hangley.com;
        smckee@hangley.com

Ronald I. Raether, Jr. (admitted *pro hac vice*)
TROUTMAN SANDERS LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614
Telephone: 949.622.2722
Facsimile: 949.622.2739
Email: ronald.raether@troutmansanders.com

*Attorneys for RealPage, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of June, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Leonard A. Bennett
Matthew James Erausquin
Casey Shannon Nash
Susan M. Rotkis
CONSUMER LITIGATION ASSOCIATES, PC
1800 Diagonal Road, Suite 600
Alexandria, VA  22314
Telephone: 757-930-3660
Facsimile: 757-930-3662
Email:  lenbennett@clalegal.com
Email:  matt@clalegal.com
Email:  casey@clalegal.com
Email:  srotkis@clalegal.com

Kristi Cahoon Kelly
Andrew J. Guzzo
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, VA  22030
Telephone: 703-424-7572
Facsimile: 703-591-1067
Email:  kkelly@kellyandcrandall.com
Email:  aguzzo@kellyandcrandall.com

James A. Francis
David A. Searles
FRANCIS & MAILMAN, P.C.
Land Title Building 19th Floor
100 S. Broad Street
Philadelphia, PA 19110
Telephone: 215-735-8600
Facsimile: 215-940-8000
Email: jfrancis@consumerlawfirm.com
Email: dsearles@consumerlawfirm.com

*Counsel for Plaintiff, James Jenkins*

/s/ Mark A. Aronchick
Mark A. Aronchick