UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HELEN STOKES, on behalf of herself and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>REALPAGE, INC.,<br><br>Defendant. | Case No. 2:15-cv-01520-JP |
| JAMES JENKINS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>REALPAGE, INC.,<br><br>Defendant. | Case No. 2:15-cv-03894-JP |

**DEFENDANT'S OPPOSITION TO MOTION FOR
APPROVAL OF SECOND DISTRIBUTION TO CLASS**

Defendant, RealPage, Inc. ("RealPage" or "Defendant"), by and through its counsel of record, submits this Opposition to the Motion for Approval of Second Distribution to Class brought by Plaintiffs Helen Stokes and James Jenkins (collectively, "Plaintiffs").

I.   **STATEMENT OF FACTS**

A.   **Plaintiffs' Agreement to and the Court's Approval of the Class Action Settlement.**

On June 30, 2017, the Plaintiffs and RealPage entered into a Settlement Agreement in this Action which provided for the certification of three Settlement Classes (ECF 51-2). The Settlement Agreement was approved by and executed by all parties to this action and their respective counsel of record (ECF 51-2).

This Court preliminarily approved the settlement on August 3, 2017 (ECF 55). On August 29, 2017, the court entered an Order approving revised forms of notice to the Settlement Classes (ECF 58). Pursuant to the Court's Orders, notice of the pendency of this action, the terms of the proposed settlement, the opportunity to opt out, object or participate, and the date of the February 6, 2018 final approval hearing was directed to 21,607 individuals by email and first-class mail (ECF 61). Based on this notice, only two class members requested to be excluded from the settlement (ECF 61). No objections were filed to the settlement (ECF 61).

On January 26, 2018, Plaintiffs moved the Court for an Order granting final approval of the settlement (ECF 61). On February 6, 2018, this Court held a detailed fairness hearing and granted Plaintiff's request for final approval of the settlement and made the following specific findings:

- "The Settlement Agreement was arrived at as a result of arms-length negotiations conducted in good faith by counsel for the parties, and is supported by the Class Representatives."

- "The settlement as set forth in the Settlement Agreement is fair, reasonable and adequate to the members of the Settlement Classes in light of the complexity, expense and duration of litigation and the risks involved in establishing liability, damages and in maintaining the class action through trial and appeal."

- "The Settlement Agreement submitted by the parties is finally approved pursuant to Rule 23(e) of the Federal Rules of Civil Procedure as fair, reasonable and adequate and in the best interests of the Classes and the parties are directed to consummate the Settlement Agreement in accordance with its terms.

(ECF 63).

   **B.**  **The Jointly Submitted and Court-Approved *Cy Pres* Award.**

This Court preliminarily approved the settlement on August 3, 2017 (ECF 55). On August 29, 2017, the court entered an Order approving revised forms of notice to the Settlement Classes (ECF 58). Pursuant to the Court's Orders, notice of the pendency of this action, the terms of the proposed settlement, the opportunity to opt out, object or participate, and the date of the February 6, 2018 final approval hearing was directed to 21,607 individuals by email and first-class mail (ECF 61). Based on this notice, only two class members requested to be excluded from the settlement (ECF 61). No objections were filed to the settlement (ECF 61).

On January 26, 2018, Plaintiffs moved the Court for an Order granting final approval of the settlement (ECF 61). On February 6, 2018, this Court held a detailed fairness hearing and granted Plaintiff's request for final approval of the settlement and made the following specific findings:

- "The Settlement Agreement was arrived at as a result of arms-length negotiations conducted in good faith by counsel for the parties, and is supported by the Class Representatives."

- "The settlement as set forth in the Settlement Agreement is fair, reasonable and adequate to the members of the Settlement Classes in light of the complexity, expense and duration of litigation and the risks involved in establishing liability, damages and in maintaining the class action through trial and appeal."

- "The Settlement Agreement submitted by the parties is finally approved pursuant to Rule 23(e) of the Federal Rules of Civil Procedure as fair, reasonable and adequate and in the best interests of the Classes and the parties are directed to consummate the Settlement Agreement in accordance with its terms.

(ECF 63).

   **B.**  **The Jointly Submitted and Court-Approved *Cy Pres* Award.**

Pursuant to Section 8.3.2 of the Settlement Agreement, after distribution of settlement payments to class members, "[a]ny checks not cashed within 90 days of delivery (or any checks that were undeliverable) shall revert to the respective escrow account on which they were to be drawn." (ECF 51-2.) "If any monies remain after reimbursing Defendant for the CAFA notices, the remaining funds shall be paid to the Actual Innocence Clinic at The University of Texas School of Law, a non-profit entity, and which the Parties jointly submit to the Court for approval as a *cy pres* award in this action." (ECF 51-2.)

On June 21, 2018, ALCS mailed settlement checks totaling $628,857.28 to the 4,749 Settlement Class Members approved to receive payment (ECF 68-1). As of November 5, 2018, well over 90 days after the distribution of settlement payments to class members, a total of 2,924 Settlement Class Member checks totaling $386,310.91 had been presented for payment (ECF 68-1). As of November 5, 2018, there is a total of $263,758.91 remaining in the Settlement Fund which, according to the Settlement Agreement, should be distributed for the settlement administrator's W-9 solicitation costs, RealPage's CAFA costs, and for the *cy pres* payment to the Actual Innocence Clinic at The University of Texas School of Law. (ECF 51-2.)

Instead, however, Plaintiff filed the instant motion on November 7, 2018 requesting that the Court approve a second distribution of settlement payments to a small subset of class members (*i.e.*, 49 of 111 Expungement Class Members and 2,875 of 4,690 Source Class Members). (ECF 68 and 68-1).

## II. ARGUMENT

### A. Plaintiffs Have No Standing to Move the Court for an Order Modifying the Terms of the Previous Approved Class Settlement to Redistribute Remaining Funds in Favor of Participating Class Members.

It is well-established that no individual class member has a property interest in any unclaimed settlement funds. *See, e.g., Keepseagle v. Vilsack*, 102 F.Supp.3d 306, 315 (D.D.C.

2015); *see also Diamond Chem. Co. v. Akzo Nobel Chems. B.V.*, 517 F.Supp.2d 212, 217 (D.D.C.2007) (quoting *Powell v. Georgia–Pacific Corp.*, 843 F.Supp. 491, 495 (W.D.Ark.1994), *aff'd*, 119 F.3d 703, 706 (8th Cir.1997) ("neither party has a legal right to the unclaimed funds")); *Wilson v. Southwest Airlines*, 880 F.2d 807, 811 (5th Cir.1989) ("We agree with the district court that ... none of the parties in this case has a legal right to the balance of the fund."); *In re Folding Carton Antitrust Litig.*, 744 F.2d 1252, 1254 (7th Cir.1984) ("we agree that neither the plaintiff class nor the settling defendants have any right to the reserve fund"); *In re Motorsports Merchandise Antitrust Litig.*, 160 F.Supp.2d 1392, 1393 (N.D.Ga.2001) ("Neither the class members nor the settling defendants have any legal right to unclaimed or excess funds.") (alteration and quotation marks omitted). Indeed, once a settlement agreement is final, "all class members who presented their claims received the full payment due them, and those who did not present claims have waived their legal right to do so. Thus, the class has no further legal rights in the fund." *Wilson*, *supra*, 880 F.2d at 811–12.

Professor Rubenstein echoes this position in the most recent edition of Newberg on Class Actions. Although there is some dispute over the property status of unclaimed funds, "most courts start from the proposition that neither the plaintiff class nor the settling defendants have any right to the unclaimed or excess funds." Newberg on Class Actions § 12:28 (5th ed. 2014) (quotation marks omitted). The argument that unclaimed settlement funds are property of the class is problematic, he posits:

> "The premise that the recovery fund is the property of the plaintiff class is not quite right because the settlement fund does not truly belong to the class as a whole, but rather to the class members individually. When a class member does not claim her share of the fund, it is not at all obvious that her share therefore belongs to the other class members. If, for example, the government distributed a tax refund to a group of taxpayers but some did not cash their checks, no one would seriously propose that the unclaimed funds are the property of, and should be distributed pro rata to, those other citizens who received tax refunds.... Additionally, an individual's presence as a class member in a class action hardly expands her property rights to include the property of the other class members. Even if it is the case that the claiming class members have received less than the full value of their claims by

4

the settlement, that fact does not magically make the nonclaimants' property theirs." *Id.* § 12:30.

Thus, it is clear that once a settlement has been finalized and approved by the Court, none of the class members, including class plaintiffs, has any property interest in any unclaimed settlement funds, especially those which have been previously agreed upon to be distributed to a *cy pres* recipient. *See, e.g., Keepseagle, supra,* 102 F.Supp.3d at 315.

In this regard, none of the class members in this action, including the class representatives, has any standing to move the Court for an order modifying a previously approved settlement agreement to grant any of the class members new property interests in undistributed settlement funds. Plaintiffs' motion must be denied on this basis alone as a matter of law.

Indeed, Plaintiffs provide no legal authority whatsoever to contradict the above-established precedent, nor do they provide any legal authority that even remotely supports their request to modify the Court's previously approved settlement. The only case Plaintiffs' motion cites to is *In re Baby Prod. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013), but that case is completely inapplicable to this action.

As a preliminary matter, *In re Baby Prod. Antitrust Litig.* involved an appeal brought by multiple class members who had previously filed objections to a class settlement that was subsequently approved over their objections. The objectors collectively and timely appealed the approval of the class settlement to the Third Circuit Court of Appeals before the settlement was funded and distributed to class members. The action did not involve a District Court's modification of a previously unopposed and non-objected to settlement in order to redistribute funds that had been designated for other class members to a subset of other class members.

In stark contrast to *In re Baby Prod. Antitrust Litig.*, none of the class members in the instant action filed any objections to the class settlement and no other objectors, class members, parties, or counsel raised any concerns at the fairness hearing relating to the appropriateness of the

5

settlement payment terms or the *cy pres* award included in the Settlement Agreement. Rather, by the express terms of the Settlement Agreement, the settlement payment terms and *cy pres* award were mutually agreed to and jointly submitted to the Court for approval by both Plaintiffs and Defendant.

Further, nearly 3,000 class members (including Plaintiffs) have already cashed their settlement checks waiving any ability for them to now demand additional payments from either Defendant or the settlement funds. *See, e.g., Keepseagle, supra*, 102 F.Supp.3d at 314 ("Those who participated in the Settlement Agreement's process assented to the extinction of their legal claims through their participation.")

Thus, because Plaintiffs previously agreed to the terms of settlement and because none of the class members objected to the settlement, no class members including the Plaintiffs have standing to now move the Court for an order modifying the terms of the Settlement Agreement which this Court painstakingly reviewed and ultimately approved based on Plaintiffs' own prior motion for approval. *Id.* at 313 (holding that class members' legal claims are extinguished when a class-action settlement is approved).

Accordingly, Plaintiffs' motion must be denied.

**B.      There Are No Grounds to Support Modifying the Court's Previously Approved Settlement to Issue a Second Settlement Distribution.**

Plaintiffs' motion also fails because there are no other grounds that justify modifying the Court's previously approved settlement to avoid the agreed upon distribution plan and instead issue a second payment to a small subset of class members. As noted, the only authority cited in support of Plaintiffs' request is *In re Baby Prod. Antitrust Litig.,* which is distinguishable from the instant action.

In *In re Baby Prod. Antitrust Litig.,* the Third Circuit Court of Appeals vacated the District Court's approval of a class settlement "because it did not have the factual basis necessary to

6

determine whether the settlement was fair to the entire class." *Id.* at 175.  Specifically, the District Court "did not know the amount of compensation that will be distributed directly to the class." *Ibid.*  After payment of attorneys' fees and expenses, the $35.5 million settlement agreement provided that only $3 million of the remaining $21.5 million would be distributed to class members, with the other $18.5 million going to *cy pres* recipients.  *Ibid.*  That is, the approved settlement was going to result in only 8% of the settlement fund being paid to class members, 40% of the settlement fund being paid to attorney fees' and expenses; and 52% of the settlement fund being paid to *cy pres* recipients.  *Id.* at 169.  The Third Circuit noted that while the claims period had already closed, counsel did not provide this necessary and vital information to the Court which would have revealed this grossly inequitable distribution scheme.  *Id.* at 175.

      This is vastly different from the instant action where the majority of the settlement funds at issue have already been paid out and where it is undisputed that the settlement class members received the largest share of the settlement funds (*i.e.*, more than class counsel and more than the remaining *cy pres* distribution).  Moreover, the Court in this case had all the information presented at the prior fairness hearing that it needed in order to properly assess the fairness of the settlement in this action including, without limitation, the specific dollar amounts designated for both the Expungement and Source Settlement Classes, the individual caps on class payments to both types of class members, the total number of Expungement and Source Settlement Class Members to be served with notice, and the approximate amount expected to be incurred by the settlement administrator.  (ECF 61 and 61-1.)  From these figures, the Court was able to determine the expected settlement payments to class members and that any remainder was properly distributed to the jointly proposed *cy pres* recipient.

      The lack of information that was present in the *In re Baby Prod. Antitrust Litig.* simply is not present in this case.  There are also no other factual or legal bases asserted by Plaintiffs or any

other class member to support the requested supplemental distributions in this case. Therefore, there is no basis on which to modify the Court's previously approved settlement and Plaintiffs' motion must be denied.

### C. Plaintiffs' Requested Distributions Exceed the Agreed-Upon Consideration to Class Members and Therefore Constitutes an Amendment to the Settlement Agreement that Is Opposed by Defendant.

Plaintiffs' request for a second distribution to class members must also be denied because the requested supplemental distribution payments exceed the agreed-upon consideration to settlement class members and therefore constitutes a material amendment to the Settlement Agreement that is opposed by Defendant RealPage. For example, Section 5.3.2 of the Settlement Agreement provides that "Expungement Settlement Class Members shall each receive equal distributions from the Expungement Settlement Fund *not to exceed One Thousand One Hundred Dollars ($1,100.00) per Expungement Settlement Class Member*." (ECF 51-2.)

However, the prior distribution that was paid out to Expungement Settlement Class Members on June 21, 2018 was $689.56 per class member. Plaintiffs now request an additional $684.72 be paid to each Expungement Class Member (ECF 68). The requested second distribution would make the total distribution to Expungement Class Members $1,374.28 per person, which is approximately 25% more per class member than what Defendant RealPage expressly agreed to pay individual class members in the Settlement Agreement.[1]

Thus, if the Court grants the Plaintiffs' motion, the small subset of participating class members will actually receive a greater recovery than what Defendant had agreed to provide

---

[1] Similarly, Section 6.3.2 of the Settlement Agreement provided that "Source Settlement Class Members shall each receive equal distributions from the Source and Chart Settlement Fund not to exceed Two Hundred Dollars ($200.00) per Source Settlement Class Member." (ECF 51-2.) The prior distribution that was paid out to Source Settlement Class Members on June 21, 2018 was $125.37 per class member. Plaintiffs now request an additional $76.40 be paid to each Source Class Member (ECF 68) making the total distribution to Source Class Members $201.77.

individual class members and would violate the express limitations that Defendant contracted for on class member remuneration for specific claims. There is no legal or factual basis to support this unilateral modification of the previously approved Settlement Agreement. Indeed, there is no legal authority that authorizes a court to compel a party to a previously agreed upon contract to amend its prior agreed-to consideration against its will. Such a principal is contrary to the fundamental tenants of contract law. Rather, the express terms of the previously agreed to Settlement Agreement should be upheld and enforced as they were previously negotiated, consented to, and approved by the Court and class members. Again, it cannot be overstated that, unlike in *In re Baby Prod. Antitrust Litig.*, there were no objections to the settlement in this action nor any other settlement concerns raised by any other class member or by plaintiffs at the fairness hearing or at any other time prior to approval of the settlement, the distribution of the settlement payments, and the class members' respective cashing of those settlement payments.

Accordingly, because the requested second distribution payments exceed the previously agreed-upon, court-approved, and noticed settlement payment amounts and because they constitute a material amendment to the Settlement Agreement which Defendant opposes, Plaintiffs' motion must be denied.

### III.   CONCLUSION

WHEREFORE, Defendant, RealPage, Inc., respectfully requests that the Court deny Plaintiffs' Motion for Approval of Second Distribution to Class, and instead require compliance with the express terms of the settlement agreement that the parties previously agreed to and which the court previously approved.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | **REALPAGE, INC.** |
|  | By its attorneys, |
| Dated: November 28, 2018 | /s/ Ronald I. Raether, Jr. |// 

Mark Alan Aronchick
Sharon F. McKee
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square, 27th Floor
18th & Cherry Streets
Philadelphia, PA 19103-6933
Telephone: 215.496.7002, 7060
Facsimile: 215.568.0300
Email: maronchick@hangley.com, smckee@hangley.com


Ronald I. Raether, Jr. (admitted *pro hac vice*)
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA 92614
Telephone: 949.622.2722
Facsimile: 949.622.2739
ronald.raether@troutmansanders.com
*Attorneys for RealPage, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on the 28th day of November, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

James A. Francis, Esq.
John Soumilas, Esq.
David A. Searles, Esq.
Lauren KW Brennan, Esq.
FRANCIS & MAILMAN, P.C.
Land Title Building 19th Floor
100 S. Broad Street
Philadelphia, PA 19110
Telephone: 215-735-8600
Facsimile: 215-940-8000

Sharon M. Dietrich, Esq.
COMMUNITY LEGAL SERVICES, INC.
1424 Chestnut St.
Philadelphia, PA 19102
Telephone: 215-981-3700

*Counsel for Plaintiff, Helen Stokes*

/s/ Ronald I. Raether, Jr.
Ronald I. Raether, Jr.

28916661